# EXHIBIT D

# UNITED STATES DISTRICT COURT

for the

District of Columbia

In the Matter of the Search of )
)
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No. 21-SC-62
INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE TOWERS PROVIDING )
SERVICE TO )
310 FIRST STREET, SE, WASHINGTON, D.C., 430 SOUTH CAPITOL STREET, SE #3, )
WASHINGTON, D.C., AND AND THE VICINITY BETWEEN THEM ON JANUARY 5, 2021 THAT )
IS STORED AT PREMISES CONTROLLED BY T-MOBILE US, INC. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2332a | Use of Weapons of Mass Destruction |
| 26 U.S.C. § 5861(d) | Possession of Unregistered Firearm (Destructive Device) |

The application is based on these facts:
See attached Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

_____ Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: ____01/13/2021____

_____
*Judge's signature*

City and state: Washington, D.C.

Beryl A. Howell, Chief Judge
*Printed name and title*

AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 21-SC-62
INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE TOWERS )
PROVIDING SERVICE TO )
310 FIRST STREET, SE, WASHINGTON, D.C., 430 SOUTH CAPITOL STREET, SE #3, )
WASHINGTON, D.C., AND AND THE VICINITY BETWEEN THEM ON JANUARY 5, 2021 )
THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE US, INC. )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____New Jersey_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein and included as part of the Affidavit in Support of this Application for a Search Warrant

**YOU ARE COMMANDED** to execute this warrant on or before _____January 27, 2021_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Chief Judge Beryl A. Howell_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____01/13/2021_____ _____*Beryl A. Howell*_____
*Judge's signature*

City and state: _____Washington, D.C._____ _____Beryl A. Howell, Chief Judge_____
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>  21-SC-62 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|
|       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge. |

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A-3

### Property to Be Searched

This warrant applies to records and information associated with the following cellular telephone towers ("cell towers") at the following date, location, and time:

|   | Cell Tower | Date | Time (Eastern Standard Time (EST)) |
|---|---|---|---|
| 1 | The cell towers that provided cellular service to 430 South Capitol Street, SE #3, Washington, D.C. | January 5, 2021 | 7:30 p.m. to 8:00 p.m. EST |
| 2 | The cell towers that provided cellular service to 310 First Street, SE, Washington, D.C. | January 5, 2021 | 8:00 p.m. to 8:30 p.m. EST |
| 3 | The cell towers that provided cellular service to the geographical area delimited by the coordinates (map below):<br><br>38.883432, -77.007033<br>38.883072, -77.006928<br>38.882983, -77.005997<br>38.883466, -77.006162 | January 5, 2021 | 7:30 p.m. to 8:00 p.m. EST |



These records are stored at premises controlled by the following cellular service provider:

- T-Mobile US, Inc. ("T-Mobile"), headquartered at 12920 SE 38th St., Bellevue, Washington.

**ATTACHMENT B**

**Particular Things to be Seized and
Procedures to Facilitate Execution of the Warrant**

I.     **Information to be disclosed by the SERVICE PROVIDERS to facilitate
       execution of the warrant**

For each cell tower described in Attachment A, the cellular service providers identified in
Attachment A are required to disclose to the United States records and other information (not
including the contents of communications) about all communications made using the cellular
tower(s) identified in Attachment A during the corresponding timeframe(s) listed in Attachment
A, including records that identify:

A.     the telephone call number and unique identifiers for each wireless device in the
       vicinity of the tower ("the locally served wireless device") that registered with the
       tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity
       Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity
       Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network
       Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and
       International Mobile Equipment Identities ("IMEI");

B.     for each communication, the "sectors" (i.e., the faces of the towers) that received a
       radio signal from each locally served wireless device;

C.     the date, time, and duration of each communication;

D.     Any Network Event Location Services (NELOS), Timing Delay/Timing Advance
       (TA), Per Call Measurement Data (PCMD), Time on Tower Report, and/or Real
       Time Tool (RTT) data that is within 100 meters of any of 430 South Capitol Street,
       SE #3, Washington, D.C., 310 First Street, SE, Washington, D.C., and the area

9

delimited by the coordinates: 38.883432, -77.007033; 38.883072, -77.006928; 38.882983, -77.005997; and 38.883466, -77.006162.

These records should include records about communications that were initiated before or terminated after the specified time period, as long as part of the communication occurred during the relevant time period identified in Attachment A.

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2332a (Use of Weapons of Mass Destruction) and 26 U.S.C. § 5861(d) (Possession of Unregistered Firearm (Destructive Device)) have been committed by unknown persons that occurred on January 5, 2021, as described in the affidavit submitted in support of this Warrant, including, for each Account, information pertaining to the following matters:

(a) Information that constitutes evidence of the identification or location of the subject or person of interest as identified in the affidavit in support of this Warrant (or otherwise known to law enforcement), as well as associates of that subject, that is, phone numbers of such persons and their associates;

(b) Information that constitutes evidence that a person was present at more than one of the dates/times/locations identified in Attachment A (that is, the dates/times/locations of certain offenses under investigation), including evidence that a phone or phone number appeared at more than one of such dates/times/locations;

(c) Information that constitutes evidence concerning persons who collaborated, conspired, or assisted (knowingly or unknowingly) in the commission of the criminal activity under investigation.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the SERVICE PROVIDER in order to locate the things particularly described in this Warrant.

**III.     Government procedures for warrant execution**

The United States government will conduct a search of the information produced by the PROVIDER and determine which information is within the scope of the information to be seized specified in Section II.  That information that is within the scope of Section II may be copied and retained by the United States.

Law enforcement personnel will then seal any information from the PROVIDER that does not fall within the scope of Section II and will not further review the information absent an order of the Court.  Such sealed information may include retaining a digital copy of all information received pursuant to the warrant to be used for authentication at trial and discovery, as needed.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC
## RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE
## 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by [**PROVIDER**], and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of [**PROVIDER**]. The attached records consist of _____ [**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of [**PROVIDER**], and they were made by [**PROVIDER**] as a regular practice; and

b. such records were generated by [**PROVIDER'S**] electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of [**PROVIDER**] in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by [**PROVIDER**], and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____          _____

Date                                    Signature

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE TOWERS PROVIDING SERVICE TO 310 FIRST STREET, SE, WASHINGTON, D.C., 430 SOUTH CAPITOL STREET, SE #3, WASHINGTON, D.C., AND THE VICINITY BETWEEN THEM ON JANUARY 5, 2021 THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE US, INC. | **Case No. 21-sc-62** <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Special Agent ███████████, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for four respective search warrants for certain records and other information pertaining to the cellular telephone towers ("cell towers") serving the Republican National Committee (RNC), located at 310 First Street, SE, Washington, D.C., the Democratic National Committee (DNC), located at 430 South Capitol Street, SE #3, Washington, D.C., and the vicinity between them during a period of time on January 5, 2021 (detailed further below), that are in the possession, custody, control, and/or stored at premises controlled by Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless"), a cellular service provider headquartered in Bedminster, New Jersey; AT&T Corporation ("AT&T"), a cellular service provider headquartered in Dallas, Texas; Sprint Corp. ("Sprint"), a cellular service provider headquartered in Overland Park, Kansas; and T-Mobile US, Inc. ("T-Mobile"), a cellular service provider headquartered in Bellevue, Washington (collectively, "the Service Providers").    The

information to be searched is described in the following paragraphs and in Attachments A-1, A-2, A-3, and A-4 (for each respective service provider). This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Providers to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since ▬▬▬▬. I am currently assigned to ▬▬▬▬▬▬▬▬▬▬ of the FBI's Washington Field Office (WFO). I have training in the preparation, presentation, and service of criminal complaints and arrest and search warrants, and have been involved in the investigation of numerous types of offenses, including crimes of terrorism.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents, agencies, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2332a (Use of Weapons of Mass Destruction) and 26 U.S.C. § 5861(d) (Possession of Unregistered Firearm (Destructive Device)) have been committed by unknown persons. There is also probable cause to search the information

described in Attachments A-1, A-2, A-3, and A-4 for evidence of these crimes as further described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  As discussed more fully below, acts or omissions in furtherance of the offenses under investigation occurred within Washington, D.C.

## PROBABLE CAUSE

6.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C.  During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.  The joint session began at approximately 1:00 p.m. (all times Eastern Standard Time (EST)).  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

7.      At approximately 1:00 p.m. on January 6, 2021, multiple law enforcement agencies received reports of a suspected improvised explosive device (IED) with wires at the headquarters of the Republican National Committee (RNC) located at 310 First Street, SE, in Washington, D.C.

8.      At approximately 1:15 p.m. on the same day, a second suspected IED with similar descriptors was reported at the headquarters of the Democratic National Committee (DNC) at 430

South Capitol Street, SE #3, in Washington, D.C.

9.  Photos of the two devices, provided below, show the suspected IEDs, protruding wires, and an object that resembles the face of a timer.



(U//LES) Figure 1: Suspected pipe located at the RNC. (Source: FBI WFO)



(U//LES) Figure 2: Suspected pipe bomb located at the DNC. (Source: FBI WFO)

10.  On January 6, 2021, the U.S. Capitol Police Hazardous Devices Section responded to the scene to neutralize it. The team disrupted the suspected IEDs in order to render them safe.

11.  Based on the photographs of the devices above, Your Affiant has probable cause to believe that the suspected IEDs were made, at least in part, of property used in interstate commerce including manufactured wires and pipes.

12.  Based on video footage collected from locations in the vicinity of the RNC and DNC, the FBI has identified an unknown subject (UNSUB) who was present in the vicinity of the locations where each suspected IED was found.

4

13.     A review of video footage captures shows that between approximately 7:30 p.m. and 8:00 p.m. on January 5, 2021, the UNSUB was in the vicinity of the DNC where the suspected IED was found.  Specifically, the UNSUB appears to be sitting on the bench next to where the suspected IED was found.  The UNSUB appears to be reaching in and around a backpack.  A review of video footage from the DNC shows the UNSUB look at, or use, a cell phone near the intersection of Canal Street, SE and South Capitol Street, SE at approximately 7:48 p.m.  This location is near the DNC.

14.     A review of video footage captured shows that between approximately 7:30 p.m. and 8:00 p.m. on January 5, 2021, the same UNSUB was traveling between the two suspected IED locations at the DNC and the RNC.  The footage showed the UNSUB walking at the intersection of North Carolina Avenue, SE, New Jersey Avenue, SE, and E Street, SE on January 5, 2021 at 7:35 p.m. and again at 7:59 p.m.  This geographical area is delimited by the coordinates 38.883432, -77.007033; 38.883072, -77.006928; 38.882983, -77.005997; and 38.883466, -77.006162.  This area is 3,660 square meters, with a perimeter of 254 meters.  This area is a mix of government and business locations.  These coordinates are plotted on the map below:



15.     A review of video footage captured shows that between approximately 8:00 p.m. and 8:30 p.m. on January 5, 2021, the same UNSUB in the vicinity of where the suspected IED was located near the RNC.

16.     Based on my training and experience, I know that it is common for individuals to carry and use their cell phones even when conducting criminal activity.  In a fact sheet from June 12, 2019, The Pew Research Center for Internet & Technology estimated that 96% of Americans owned at least one cell phone.[1]

17.     On January 8, 2021, the FBI sent preservation letters pursuant to 18 U.S.C. § 2703(f) to the Service Providers that requested that the providers preserve the data identified in Attachments A-1, A-2, A-3, and A-4.

---

[1] *See* Mobile Fact Sheet, https://www.pewresearch.org/internet/fact-sheet/mobile/ (last visited Jan. 9, 2021).

## BACKGROUND REGARDING PROVIDERS AND CELLULAR PHONES

### Cellular Devices

18.     In my training and experience, I have learned that cellular devices (cellular phones, cellular-enabled tablets, etc.) use radio frequencies to communicate.  When a cellular device is "on," the cellular device constantly scans its environment, evaluating and ranking which towers have the strongest signal.  This can occur in the background, regardless of whether a user is actively using the device.  By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data (push alerts, emails, etc.).  When a cellular device places or receives a call, it will utilize the cellular tower and sector with the strongest signal.  The tower with the strongest signal generally comes from the tower that is closest to the phone, or in its direct line of sight, but when sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.  A cellular device may also utilize different generations of technology, i.e., 3G, 4G, 5G, etc, and switch between these based on what the cellular device is doing at any given moment.

19.     Based on my training and experience, I also know that every cellular device is identified by one or more unique identifiers.  For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").  The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

## Cell Towers

20.     Antenna towers (sometimes referred to as cell sites and here, "cell towers") come in a variety of shapes and sizes.  They also can be located in a variety of places, including but not limited to church steeples, chimneys, water towers, or the sides of buildings.

21.     Cell towers can operate using different generations of technology, i.e., 3G, 4G, 5G, and some cell towers may not be able to use one or another generation.

22.     Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity.

23.     Cell towers typically provide 360 degrees of coverage further divided into sectors. For example, a three-sector tower would have three, 120-degree sectors.  Each of the sectors has a unique identifier which corresponds with the side of the tower used by the cellular telephone.

24.     A search of cell tower lists furnished by the Service Providers to the FBI identified approximately 337 unique cell sectors within a 0.5 mile square of the locations of interest in this particular investigation.  Specifically, Verizon Wireless had approximately 121 cell sectors in this area as reported on August 2020, AT&T had approximately 143 cell sectors as reported on Jun 2020, T-Mobile had approximately 42 cell sectors as reported on October 2020, and Sprint had approximately 31 cell sectors as reported on November 2020.

## Service Providers

25.     In my training and experience, I have learned that Service Providers are companies that provide cellular communications service to the general public.  In order to provide this service, many cellular service providers maintain cell towers that serve and provide cellular service to devices that are within range of the cell tower's signals.

26.     Based on my training and experience, I know that cellular providers, such as the Service Providers, routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications.  For each communication sent or received via the wireless provider's network, these records may include: (1) the telephone call number and unique identifiers of the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.*, face of the tower), to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication.  These records may also include the source and destination telephone numbers associated with the communication (including the number of the telephone that was called or that called the locally served wireless device) and the type of communication (e.g., phone call or SMS text message) that was transmitted.

27.     Based on my training and experience, I know that cellular providers, such as the Service Providers, have the ability to query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period of time and to produce the information described above.  I also know that cellular providers have the ability to determine which cellular tower(s) provided coverage to a given location at a particular time,

28.     Based upon my training and experience, I know it is possible for cellular providers to query cellular numbers that utilized cell towers/sectors servicing locations of interest, commonly referred to as a "tower dump."  The results of these queries may be analyzed to identify common cellular numbers utilizing cell towers/sectors consistent with the geographic area and/or locations of interest.

## REQUEST TO SUBMIT WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

29.    I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Search Warrant.  I submit that Assistant U.S. Attorney Stuart Allen, an attorney for the United States, is capable of identifying my voice and telephone number for the Court.

## CONCLUSION

30.    Based on the above facts, there is reason to believe that the records described in Attachment A would identify which wireless devices were in the vicinity of the three target locations on January 5, 2021 between 7:00 p.m. and 8:30 p.m. EST at the relevant times.  This information, in turn, will assist law enforcement in identifying potential suspect(s) in the vicinity of towers serving the target locations when the target offenses occurred.

31.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

32.    I further request that the Court direct the Service Providers disclose to the government any information described in Section I of Attachment B that is within their possession, custody, or control.  Because the warrant will be served on the Service Providers, who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

33.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on January 13, 2021

Beryl A. Howell

Honorable Beryl A. Howell
Chief Judge
United States District Court
for the District of Columbia

11